# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

KIRBY LANDRY,

    PLAINTIFF,

v.                                            CASE NO.: CV-12-J-2033-NE

LINCARE, INC.,

    DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 16), brief and evidence in support of said motion (docs. 16-2 and 17), to which the plaintiff filed a response and evidence in opposition (docs. 19 and 20), and the defendant thereafter filed a reply (doc. 22). Having considered the pleadings, evidence and memoranda of the parties, the court finds as follows:

### I. Factual Background

Plaintiff sues his past employer for violation of Title VII, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981 for race (black) discrimination, and negligent hiring, training, supervision and retention under Alabama law.

Plaintiff was employed by defendant as a service representative/deliver driver beginning in October 2010. Plaintiff depo. at 25, 28 (submitted as defendant ex. A); affidavit of Paula Adams, Director of Employee Relations (submitted as defendant

ex. C), ¶ 3.  The job required delivery of oxygen and other hospital type equipment to individual customers.  Plaintiff depo. at 83-84.  Plaintiff would deliver a new tank of oxygen and retrieve the old tank at the same time.  Plaintiff depo. at 84.

He was hired by Rebecca Jones, with whom he had previously worked elsewhere.  Plaintiff depo. at 12-14, 25; affidavit of Adams, ¶ 3.  He was terminated on July 6, 2011.  Complaint, ¶ 14.  By deposition the plaintiff stated that as long as Jones was his manager, he had no discrimination issues with defendant.  Plaintiff depo. at 15, 36.  When Lisa Wilson replaced Jones, he had no problems with her either.  Plaintiff depo. at 37.  Not until Amber Burns became manager, at the beginning of June 2011, did the plaintiff experience any issues at work.  Plaintiff depo. at 50-51; Adams affidavit, ¶ 3.  Bobby Matthews, who is black, was the senior driver and hence plaintiff's direct supervisor.  Plaintiff depo. at 59-64.

When asked about the white employer who was treated better than he was, the plaintiff pointed to Cory Sircy, who was hired at the same time as plaintiff.  Plaintiff depo. at 51-52.  Approximately four weeks after being hired, Sircy voluntarily quit, then was given his job back one week later.  Plaintiff depo. at 53-54.  Rebecca Jones was the manager for this entire time period.  Plaintiff depo. at 53-55.  Additionally, Sircy worked in ragged shirts and jeans without repercussions, instead of wearing the provided uniform.  Plaintiff depo. at 56.  Sircy was not disciplined for his choice of clothing.  *Id.* at 56-57.

Plaintiff also alleges his termination was based on his race, and the reason given for his termination was a pretext for discrimination. Complaint, ¶¶ 18, 20. The weekend of June 25 and 26, 2011, the plaintiff was on-call. Plaintiff depo. at 87. On weekends, an on-call service would answer patients' calls and forward the messages to the on-call worker. Plaintiff depo. at 89. The on-call worker then had to call the patient back. Plaintiff depo. at 89.

During the weekend in question, the plaintiff received a call through the on-call service that he needed to contact a particular patient. Plaintiff depo. at 100-101. He returned the call and learned that patient wanted a portable oxygen tank. Plaintiff depo. at 101; plaintiff affidavit, submitted as plaintiff ex. C, at ¶ 5. The plaintiff inquired as to whether the patient had a sufficient supply of liquid oxygen, to which the patient responded that he did, so the plaintiff told the patient that he would put in a request for a portable liquid oxygen tank when he returned to the office, because such tanks were in scarce supply. Plaintiff depo. at 101-103. Because the request was not an emergency, the plaintiff told the patient he would handle it during normal business hours. Plaintiff depo. at 102. Later that day, the same patient called the call-in line, and reported he still needed a portable oxygen tank, but also needed a big oxygen tank. Plaintiff depo. 125.

The call center service records reflect that plaintiff stated he never spoke with that particular patient. Plaintiff depo. at 126. The plaintiff agreed that not returning

a call would be a violation of the on-call policy and could lead to termination. Plaintiff depo. at 128. However, by affidavit the plaintiff asserts he never said he did not speak to this patient, and further asserts that the call center records are not accurate. Plaintiff affidavit, ¶ 5.

According to Burns, the patient reported that he called twice because he was out of oxygen, and when plaintiff did return his call on Sunday, the patient told him he needed the delivery by 6 p.m. Burns affidavit, ¶ 5; see also Adams affidavit, ¶ 7. Although the patient was waiting until 6:30, the plaintiff failed to make the delivery. Burns affidavit, ¶ 5. The oxygen was delivered by the plaintiff that Monday. *Id*., at ¶ 6; Adams affidavit, ¶ 8.  See also defendant ex. submitted as doc. 17-1 at 27.

Somewhat confusingly, the plaintiff then testified that he knew that patient had called in the afternoon. Plaintiff depo. at 131. He was unaware of any call from the same patient prior in the day. *Id.*, at 131. The defendant's records reflect that the plaintiff delivered the portable liquid oxygen to this patient on Monday, June 27, 2011, and refilled the large liquid oxygen tank at the same time. Plaintiff depo. at 134-136, Burns affidavit, ¶ 5.  In an unsworn statement to the EEOC, the patient asserted he was not in danger of running out of oxygen. *See* plaintiff ex. D.

According to the plaintiff, he was terminated for not servicing a customer. Plaintiff depo. at 149.  He asserts that Cory Sircy did the exact same thing and was not disciplined at all. Plaintiff depo. at 148-149. However, he does not know that

4

Amber Burns had any knowledge of Sircy's actions. Plaintiff depo. at 149-152. He also did not utilize any of the procedures in defendant's handbook to challenge his termination or report any perceived discrimination. Plaintiff depo. at 151-153; Adams affidavit, ¶¶ 5-6. According to plaintiff, his termination and the surrounding events are the basis for his claims for disparate treatment, hostile work environment, termination, and other adverse conditions of employment. Plaintiff depo. at 156-157.

By affidavit, Burns states that soon after she became the manager in the defendant's Huntsville branch, she noted Sircy's ongoing issue with tardiness. Affidavit of Burns, submitted as defendant ex. B, ¶ 2. She had prepared a final written warning for Sircy, but he informed Burns he would not be returning to defendant's employment before she could present the warning to him. *Id.,* see also defendant ex. submitted as doc. 17-1, at 30-31. Burns was unaware of any incident where Sircy failed to deliver an oxygen tank. Affidavit of Burns, ¶ 3. She hired Eric Slaughter, a black male, to replace Sircy. *Id.*, ¶ 2; Affidavit of Eric Slaughter, submitted as defendant ex. D, at ¶ 2.

Burns stated that, based on the information before her, she had reason to believe that plaintiff failed to deliver oxygen in an emergency situation. Burns affidavit, ¶ 6. At the same time, she heard from another patient that his delivery the previous Friday was made very late, after his service representative failed to contact him to see if he needed oxygen. *Id.*, at ¶ 6; Adams affidavit, ¶ 9. *See also* defendant

ex. submitted at doc. 17-1 at 25. Burns also was unable to reach him the following Friday, and heard from others in his office that he got his route covered so he could leave early for the July 4th weekend. Burns affidavit, at ¶ 8. Therefore, she terminated him on July 6, 2011. Defendant ex. submitted as doc. 17-1 at 20.

As to the plaintiff's claim of negligent hiring, training and supervision and retention, he states this claim is based on defendant's failure to conduct background checks or check references prior to hiring Amber Burns, which lead to discrimination against him. Plaintiff depo. at 158. However, the plaintiff also testified he had no idea whether such pre-hiring checks or post-hiring training was conducted or not. Plaintiff depo. at 158-160. He stated only that defendant failed to supervise Burns adequately because she did not seem to know what she was doing. Plaintiff depo. at 160. The plaintiff admits he has no evidence that defendant knew of his allegations against Burns concerning discrimination, and no evidence that defendant failed to properly hire, train, supervise and/or terminate Burns. Plaintiff depo. at 162.

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences

therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005).

### III.  Legal Analysis

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001);

*Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000). Applying these standards, the court has considered the plaintiff's claims.[1]

A plaintiff alleging a violation under Title VII bears the burden of proving that an employer illegally discriminated against him. *Hinson v. Clinch Cnty.*, 231 F.3d 821, 827 (11th Cir.2000). Absent direct evidence of discrimination, the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant to that framework, a plaintiff may establish a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly-situated employees outside of his class more favorably; and (4) he was qualified for the job. *See Burke–Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006).

The parties do not dispute that the plaintiff can meet the first, second and fourth elements in this burden. The defendant disputes that the same decision maker treated anyone who violated the same work rule in a different manner. In order to make a valid comparison, the plaintiff must show that he and the comparator are similarly

---

[1] In his response to the motion for summary judgment, the plaintiff addresses his claim for race discrimination (response at 13), and argues that comparator evidence is not always necessary (response at14-16). Because race discrimination is the only cause of action briefed by the plaintiff, the court finds any other claim is abandoned. *See e.g., Flanigan's Enterprises, Inc. v. Fulton Co., GA*, 242 F.3d 976, 987 n.16 (11th Cir.2001); citing *Continental Technical Services, Inc. v. Rockwell Intern. Corp.*, 927 F.2d 1198, 1199 (11th Cir.1991) ("An argument not made is waived...")..

situated in all relevant respects. *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 n. 17 (11th Cir.2011); citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.2004) (The comparator must be nearly identical to the plaintiff in order to prevent courts from second-guessing an employer's reasonable decisions). Additionally, a proffered comparator's actions are only relevant if the plaintiff shows that the decision maker knew of the prior similar acts and did not discipline the rule violators. *Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir.1989).

The court is of the opinion that the plaintiff has not pointed to any evidence which supports this element of his prima facie case. However, the court continues through the analysis because, even if the plaintiff could show a similarly situated comparator who was treated differently than he was, the plaintiff cannot show that the defendant's reasons for doing so were pretextual and/or discriminatory. Plaintiff himself agrees that if the defendant's records are correct, they are grounds for termination. *See* plaintiff's memorandum, at 9, ¶ 3.

Thus turning to the rest of the analysis employed in claims of discriminatory treatment, the court considers whether the defendant has rebutted the resulting presumption of discrimination by articulating at least one legitimate, non-discriminatory reason for its action. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir.2010). Defendant quite succinctly asserts the plaintiff

was terminated for violation of work rules, specifically not answering his phone when on call and not delivering oxygen while on-call.

The defendant having so proffered a non-discriminatory reason for its actions, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reason is a pretext for discrimination. *See Alvarez*, 610 F.3d at 1264. The plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason. *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir.2006). He may do this either directly by persuading the court that a discriminatory reason more likely than not motivated the employer, or indirectly by showing that the proffered reason is unworthy of credence. *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005).

The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris v. Shelby County Bd. of Ed.,* 99 F.3d 1078, 1083 (11th Cir.1996). A plaintiff has not successfully demonstrated pretext "unless it is shown both that the reason was false, *and* that discrimination was the real reason." *Brooks*, 446 F.3d at 1163 (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993)).

Where the defendant offers the plaintiff's violation of a work rule as its reason for the termination, the reason "is arguably pretextual when a plaintiff submits

evidence (1) that [he] did not violate the cited work rule, or (2) that if [he] did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 (11th Cir.1999). The proffered comparator's actions are only relevant if the decision maker knew of the prior similar acts and did not discipline the rule violators. *See Jones v. Gerwens*, 874 F.2d 1534, 1542 (11th Cir.1989). Likewise, comparator evidence fails where different decision makers are involved. *Jones v. Gerwens*, 874 F.2d at 1541. Knowledge of a prior act cannot be imputed on a decision maker, because "[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir.2001). *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent). The court in *Silvera* noted that "differences in treatment by different supervisors or decision makers can seldom be the basis for a viable claim of discrimination." *Silvera*, 244 F.3d at 1261 n. 5. See also *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1312 n. 7 (11th Cir.1998) ("Different supervisors may have different management styles that—while not determinative—could account for the disparate disciplinary treatment that employees experience.").

11

The plaintiff before this court takes both routes in attempting to prove pretext, namely that he did not violate the work rule in question, and that he was treated differently that someone who did violate the same rule.  The court will address each in turn.  Clearly, whether plaintiff actually violated the work rule is not the focus of the court's attention.  Rather, whether the decision maker who terminated the plaintiff's employment believed that rule was violated is the relevant question.

Plaintiff has offered no evidence to establish that at the time the decision to discharge him from his employment was made, Amber Burns, the decision-maker, did not fire him on the grounds that she believed that Plaintiff had failed to return a call to a patient over the weekend.  Regardless of what actually happened and regardless of the accuracy of the call center records, evidence existed from which Amber Burns concluded that during the weekend in question, the plaintiff received a call through the on-call service that he needed to contact a particular patient.  Plaintiff depo. at 100-101.  The call center service records reflect that plaintiff stated he never spoke with that particular patient.  Plaintiff depo. at 126. The patient reported that he called twice because he was out of oxygen, and when plaintiff did return his call on Sunday, the patient told him he needed the delivery by 6 p.m.  Burns affidavit, ¶ 5; Adams affidavit, ¶ 7. Although the patient was waiting until 6:30, the plaintiff failed to make the delivery.  Burns affidavit, ¶ 5. The oxygen was delivered by the plaintiff that

Monday. *Id.*, at ¶¶ 5-6; Adams affidavit, ¶ 8. *See also* defendant ex. submitted as doc. 17-1 at 27; plaintiff depo. at 134-136.

Thus, from the evidence which existed at the time Burnes made her decision, the plaintiff was terminated for not servicing a customer. No evidence contradicts Burns' basis for this determination. Specifically, the plaintiff offers no evidence that supports Burns' belief was outside the realm of reason.

Moving to his next argument, the plaintiff asserts that, even if he did fail to service a customer, Cory Sircy did either the same or a worse thing and was not disciplined at all. Plaintiff depo. at 67-69; 148-149; plaintiff memorandum, at 17. Yet, the plaintiff could not state for certain that Amber Burns had any knowledge of Sircy's actions. Plaintiff depo. at 149-152. Burns herself stated under oath that she was unaware of any incident where Sircy failed to deliver an oxygen tank. Affidavit of Burns, ¶ 3. Although the plaintiff has provided affidavits of coworkers who state they think Burns overheard talk of the incident with Sircy, the Eleventh Circuit has "made clear ... that in the context of Title VII retaliation claims neither a court nor a jury may impute knowledge to a decision-maker who has sworn [s]he had no actual knowledge." *Summers v. City of Dothan,* 444 Fed. Appx. 346, 352 (11th Cir.2011)(quoting *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir.2002))(internal quotations omitted).

Burns stated that, based on the information before her, she had reason to believe that plaintiff failed to deliver oxygen in an emergency situation. Burns affidavit, ¶ 6. At the same time, she heard from another patient that his delivery the previous Friday was made very late, after his service representative failed to contact him to see if he needed oxygen. *Id.*, at ¶ 6; Adams affidavit, ¶ 9. *See also* defendant ex. submitted as doc. 17-1 at 25. Burns also was unable to reach him the following Friday, and heard from others in his office that he got his route covered so he could leave early for the July 4th weekend. Burns affidavit, at ¶ 8. Therefore, she terminated him on July 6, 2011. Defendant ex. 5.

The plaintiff points to no evidence which supports a finding that his termination was pretextual. The plaintiff has failed to show that Burns based her decision to discharge plaintiff on an unreasonable, as opposed to mistaken, belief. *See, e.g., Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 755 (11th Cir.2002) ("An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief."); *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir.2001), cert. denied, 534 U.S. 976, 122 S.Ct. 402, 151 L.Ed.2d 305 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000), cert. denied,

532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Equal Employment Opportunity Comm'n v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir.2000) (plaintiff could be properly discharged on defendant's good faith belief that she lied in an internal investigation); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir.2000), reh'g denied, 218 F.3d 749 (11th Cir.2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (court's pretext inquiry is properly limited to whether the decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989) (An employer's honest belief (even if erroneous) that an employee violated a work rule constitutes a legitimate, nondiscriminatory reason for firing an employee); *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1501 (11th Cir.1985) (employer's belief, honest but mistaken, may nonetheless provide legitimate reason for discharge).

Despite plaintiff's conclusory assertion to the contrary, he has offered no evidence which contradicts the evidence before this court that he was terminated because Burns believed he failed to answer his phone and deliver oxygen while on-

call, nor does plaintiff provide evidence that Burns's belief was unreasonable. In the absence of such evidence and in the absence of any evidence that Burns was motivated by a prohibited discriminatory animus, the court finds that defendant is entitled to summary judgment on these claims.

Similarly, the plaintiff has failed to offer any evidence to support a factual inference that Burns more likely than not acted with a discriminatory motive. Although the plaintiff procured affidavits which state "the overall feel at the Huntsville location was Amber Burns targeted the African American employees" (plaintiff Ex. A, ¶ 7), such general allegations are insufficient to survive summary judgment. Additionally, Burns hired Eric Slaughter, a black male, to shortly after becoming manager. Burns affidavit, ¶ 2; Affidavit of Eric Slaughter, submitted as defendant ex. D, at ¶ 2.  Plaintiff also fails to offer any evidence to support a finding that his manager more likely than not acted with a discriminatory motive.  Even if Sircy was treated better than plaintiff by previous managers, the plaintiff testified he experienced no discrimination problems under any manager until Amber Burns was hired.  Sircy then quit before Burns could fire him.  Burns affidavit, ¶¶ 2-4.  Because the plaintiff has not presented sufficient evidence from which a reasonable finder of fact could conclude pretext, the court will grant summary judgment on the plaintiff's disparate treatment claim.  See *Barnette v. Federal Exp. Corp.*, 491 Fed.Appx. 176, 183 (11th Cir.2012).

## IV. Conclusion

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on his claims, the court is of the opinion that the defendant's motion for summary judgment is due to be granted and shall so rule by separate Order.

**DONE** and **ORDERED** this the 22nd day of May, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE